P. Millón & Co., Sucrs., demandantes y apelados, *v.* Ramón Caamaño y Manuel García, demandados y apelantes.

No. 4405.—*Visto:* Mayo 4, 1928. *Resuelto:* Mayo 11, 1928.

194

*Luis Mercader,* abogado de los apelantes; *José G. Torres* y *C. del Toro Fernández,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

En la Corte de Distrito de Arecibo presentó P. Millón & Co., Sucesores, sociedad mercantil establecida en San Juan, P. R., una demanda contra R. Caamaño y Manuel García, en reclamación del pago de $580.33, intereses y costas; fundando tal petición en que los demandados habían suscrito a favor del demandante un pagaré, que se copia en la demanda, por la antes referida suma, y que llegados los términos para los, pagos, no habían satisfecho cantidad alguna.

El demandado R. Caamaño, contestó la demanda, negando haber suscrïto el pagaré que en aquélla se copia, y negando sustancialmente las demás alegaciones: y alegando como defensa que sus acreedores, en 19 de febrero de 1924, tenían incoados contra él, procedimientos judiciales para el cobro de sus créditos, y le habían embargado su establecimiento de comercio, y se trató de solicitar su declaración de quiebra, y entonces se le presentó en Arecibo Plácïdo Millón y le pidió que le firmara un documento para pagar la cuenta de P. Millón & Co., en plazos cómodos, cuyo documento escribió de su puño y letra el mismo Millón, y lo firmaron el que contesta y Don Manuel García como testigo, poniendo la palabra "testigo" antes de la firma; y que a cuenta de ese crédito el que contesta ha pagado a la demandante $15 en un money order, $50 en un cheque, y $24.55 en géneros que la demandante le ha tomado; y cuyas sumas no se le abonan por la demandante.

El otro demandado, en su contestación, negó los hechos esenciales que en la demanda se alegan, y negó que el pagaré que aparece copiado en la demanda haya sido firmado por él; alegó que el pagaré que fué mostrado al que contesta, y a otros, lleva copia de las firmas de Caamaño y de Manuel García, tachada la palabra "testigo" antes de esa última firma, cuya palabra había sido puesta por el mismo Manuel García en otro documento: alegó, como defensa que Plácido Millón, gestor de la demandante, se hallaba en Arecibo, en el Hotel de propiedad de este demandado, en 19 de febrero de 1924, y mandó buscar a Caamaño, y después de hablar con él acerca de sus deudas, consiguió "que Caamaño se comprometiera a pagar la totalidad de su deuda a P. Millón & Co.," y el mismo Plácido Millón redactó y escribió un compromiso para que lo firmara Caamaño, que lo hizo, y entonces invitó a este demandado García a que firmara el documento como testigo, lo que hizo el que contesta, anteponiendo

a su firma la palabra "testigo" siendo ése el único documento que conoce.

La demanda fué enmendada en el sentido de hacer abono a la deuda de las sumas de $15, y $50 pagadas por el demandado Caamaño.

En 17 de junio de 1926 se vió el caso en la Corte de Distrito de Arecibo, que dictó sentencia declarando sin lugar la demanda, cuya sentencia fué revocada por este Tribunal Supremo en 25 de febrero de 1927, (36 D.P.R. 322) dictándose una en el sentido de tener a los demandantes por desistidos. Pidieron los demandantes nuevo juicio: y obtenido, se vió el caso el 18 de mayo de 1927. En el juicio, los demandados han sostenido que el documento o pagaré presentado por la demandante no es el que ellos firmaron, ya que este último fué escrito de puño y letra de Plácido Millón. El demandado Caamaño que empezó, al declarar, por decir que la firma que aparece en el pagaré presentado por la demandante, se parece a la suya, pero que el papel no era el mismo, vino a decir que aquella firma era la suya: y afirmó que el documento original no era el que se le presentaba, ya que el original estaba escrito por el mismo Millón de su puño y letra, y no en maquinilla (el documento presentado está mecanografiado). Y declaró asimismo que se había alterado el documento, porque se había borrado la palabra "testigo" que antecedía a la firma de Manuel García, y se había puesto (en maquinilla) la palabra "fiador." El demandado García dijo, en un principio, que la firma que aparece como suya en el referido documento, es una imagen y semejanza de la suya, pero que no la puso él; y más tarde, a preguntas del juez, dijo que la firma que se ve en el documento es la suya; pero sostuvo que el documento que se presenta no es el que él firmó; que el firmado por él lo fué como testigo, y que no cree que el documento que se le presenta en el juicio sea el mismo que él firmó; que el que firmó no tenía tiras de papel, y estaba escrito por Millón, y no

en maquinilla. Este testigo sostuvo en su declaración que él firmó el documento como testigo, y no como fiador solidario.

La prueba principal se produjo en el sentido de ser las firmas que aparecen en el documento presentado las de R. Caamaño y Manuel García.

En 7 de junio de 1927, la Corte de Distrito de Arecibo dictó sentencia declarando con lugar la demanda, y condenando a los demandados Ramón Caamaño y Manuel García a pagar mancomunada y solidariamente a la demandante la suma de $515.33, con las costas del pleito y contra esta sentencia se ha interpuesto el presente recurso. A la sentencia se acompaña opinión, que se hace formar parte de aquélla, y en la que se hace un cuidadoso y preciso examen de la prueba, y de las cuestiones de ley presentadas.

■■ El documento de que se hizo mérito en este pleito, dice así:

"Pagaremos, solidaria y mancomunadamente a la orden de los Sres. P. Millón y Cía. Sucrs. de San Juan, P. R., la suma que al pie de este documento se expresa, comprometiéndonos también a cubrir los gastos de honorarios de abogado, etc. que fueran necesarios.

"La suma adeudada a los Sres. P. Millón y Cía., Sucrs. de San Juan, es de $580.33 más los gastos que incurrieran según arriba antedicho.

"El pago de la suma antedicha será como sigue:

"Primer plazo: $290.00 dólares por concepto de dos cheques que obran en poder de los citados Sres. Millón, pagaderos el 24 y 29 del corriente mes y año.

"La cantidad restante de $293.33, será cubierta dentro del plazo convenido con los citados Sres.

"Arecibo, P. R., febrero 19, 1927. (Fdo.) R. Caamaño. (Fdo.) Manuel García, Fiador." La palabra "Testigo escrita a mano, está tachada.

La palabra "testigo", que aparece haberse puesto al lado de la firma de Manuel García, se halla cruzada por unas cinco líneas, para tachar, y en tinta, cuya apariencia es de ser la misma que la empleada al escribir la palabra, y al

escribir el nombre "Manuel García." Hablamos de la apariencia, y no como afirmación de hecho alguno. El documento aparece unido en dos sitios, en la dimensión de anchura, por dos tiras de papel transparente y adhesivo. Se halla escrito en maquinilla.

En cuanto a las firmas en el documento de que se trata, la que dice "R. Caamaño" tiene las letras iniciales muy grandes y las curvas altas de la R. y de la C. pasan la línea de rotura o desgaste, que se halla cubierta por una tira de papel transparente: de modo que la firma no se encuentra en un solo pedazo de papel, sino en dos. El examen del documento, teniendo presente la declaración del perito Sr. Timothée, convence de que no ha habido sustitución alguna de partes de tal documento; conclusión a la que llegó el juez sentenciador en la opinión por él rendida en el caso. Esto en cuanto a un examen material.

En cuanto al significado y valor jurídico del contexto de dicho pagaré, las palabras con que empieza: "Pagaremos solidaria y mancomunadamente" declaran la existencia expresa de una obligación solidaria: y la firma de dos personas al pie de ese documento no puede interpretarse, ni aceptarse en forma alguna que no sea la de darle el carácter de obligados en ese contrato.

El juez sentenciador no vaciló en hacer la declaración de que el documento presentado es el auténtico que suscribieron y entregaron los demandados al Sr. Millón, agente de la demandante. Esa es la apreciación que de la prueba en cuanto a ese particular hizo el juez, y que no puede tacharse de errónea, ni de influida por pasión o prejuicio. Y lo mismo decimos en cuanto a la apreciación de toda la prueba en el caso. Con esta declaración quedan resueltos los señalamientos de error que bajo los números "Segundo" y "Tercero" presenta el apelante Manuel García.

■ Pero este apelante, Manuel García, ha señalado,

como error, que la corte se declaró con jurisdicción en el pleito, a pesar de que la cuantía es menos de $500.

La demanda en este caso contenía la reclamación de $580.33, intereses legales y costas. En la enmienda a esa demanda, se redujo la suma reclamada a $515.33. Esta suma es bastante para establecer la jurisdicción de la corte por razón de la cuantía. Aunque los demandados, o alguno de ellos, alegaron que la cantidad adeudada era menor que la pedida, esto no quitaría la jurisdicción a la corte; y ni aún probándose una cantidad menor, perdería la corte su jurisdicción. En el caso *Turner* v. *Consejo Municipal de San Juan*, 24 D.P.R. 594, este tribunal sostuvo la doctrina corriente y constante de que "la suma reclamada determina la jurisdicción de la corte," citándose allí las autoridades necesarias.

No hubo falta de jurisdicción en la corte en este caso.

Se ha señalado como error el que la corte consideró a García, el demandado, como fiador solidario de la obligación reclamada. Y para argumentar este punto se tratan las declaraciones de Millón, Caamaño y García.

Ante todo, es de estudiar el contexto del documento. No puede sostenerse con éxito que una persona de cabal juicio y completa capacidad, cuando suscribe un documento de declaración de deuda, no se detenga a ver el documento, y a saber lo que firma. Lo regular, lo humano, es que cualquier persona consciente, que va a firmar un documento de esa clase, lo vea, y se dé cuenta de cuáles son las posibles responsabilidades de su acto; máxime, cuando, como aquí ocurrió García antepuso a su firma la palabra "Testigo", y la tuvo que tachar a indicación de Millón; esto es lo que el juez ha estimado cierto al apreciar la prueba.

Existe aquí cuando menos, la presunción satisfactoria y controvertible de que toda persona cuida de sus propios asuntos con el celo o diligencia ordinarios, y la de que se

ha seguido el curso ordinario de los negocios, ambas del artículo 102 de la Ley de evidencia.

En el documento presentado se dice:

"Pagaremos solidaria y mancomunadamente . . . etc."

Esta forma de establecer la obligación no es otra cosa que la expresión de la solidaridad, de la constitución de responsabilidad *in solidum,* en bloque en cuanto a los deudores, y dando al acreedor las facultades y derechos especiales de esta clase de obligaciones, entre ellas, la de, reclamar el cumplimiento por cualquiera de los obligados, y en la totalidad de la prestación. Por esta razón las fianzas en que el fiador acepta la condición de solidario casi se confunden con la obligación solidaria corriente, ya que el fiador, en esos casos, pierde el derecho de excusión de bienes del deudor principal (No. 2, Art. 1732, Código Civil). Si el fiador, en esos casos, no conservara con respecto a su fiado, algunos de los derechos especiales que crea el contrato de fianza, se podría creer que aquellas obligaciones, con la nota de solidaridad, no tenían el carácter de fianzas.

Tan se equipara por el código la situación del fiador solidario, a la del deudor de la misma clase, que el párrafo segundo del artículo 1723 de dicho código, ordena la observancia de lo dispuesto en la Sección IV, Capítulo III, Título Primero, del Libro Cuarto, que se refiere a las obligaciones mancomunadas y obligaciones solidarias. Y este tribunal, en el caso *Santiago* v. *Ares,* 25 D.P.R. 481, ha declarado que el artículo 1111 del Código Civil, es aplicable a los fiadores solidarios.

En el caso *Cintrón y Aboy* v. *Solá,* 22 D.P.R. 262, este tribunal declaró que la intención de las partes contratantes se revela por el contexto del pagaré de que allí se trata, y cuyo documento empieza con estas palabras: "Pagaremos solidariamente a Don Antonio María Sorbas. . . ." Por ese contexto, y por la investigación de la intención de las partes,

se declaró en ese caso que Solá e Hijo, y Celestino Solá, que firmaban aquel documento, eran deudores solidarios.

■ Se argumenta por la parte apelante que la fianza no existe más que cuando el contrato principal es válido: y que en este caso, tal contrato principal no es válido ni eficaz.

La teoría de que para que la fianza exista es preciso que la obligación principal sea válida, es la que declara el Código Civil en su artículo 1725, que, en su primer párrafo, dice:

"Art. 1725—La fianza no puede existir sin una obligación válida."

Y ésa es la consecuencia de la propia naturaleza del contrato de fianza, por su esencia accesorio, y necesitado, como todo lo accesorio, de la existencia de un elemento principal sólido y de eficacia jurídica.

Pero ese artículo nunca ha permitido que la declaración de uno de los contratantes, en el sentido de que el contrato principal es nulo o ineficaz sea suficiente para anular la fianza. Y en el caso presente, la corte ha estimado como eficaz y válido el contrato principal; y no cabe argumentar como lo hace la parte apelante, mientras no desaparezca esa declaración de la corte.

Si, como parece pretender la parte apelante, hay que dar una extraordinaria importancia, a como se puso en el documento la palabra "fiador", y se llegara a suprimir esta palabra, el contrato sería simplemente de crédito o deuda mancomunada y solidaria, y la situación de la parte apelada sería peor de lo que ahora es.

■ Como quinto error se señala el de haberse impuesto las costas al apelante.

Ante todo, las costas han sido impuestas a los demandados, y no sólo al ahora apelante.

Pero, después de leer este récord taquigráfico, y vista la actitud de los demandados, a todas luces temeraria, no cabía determinar, en cuanto a las costas, de otra forma que como lo hizo la corte sentenciadora.

Los errores señalados por el apelante, no son tales. Y por ello *debe confirmarse la sentencia apelada.*